network relationship with BCBS. Similarly, in a competitive market and absent barriers to entry, insurance competitors would enter the market and offer lower premiums. Neither of these occur in the relevant market because of barriers to entry presented to competitors by virtue of the Baptist Health/Blue Cross/HMO Partners combination and concerted action.

185.  The defendants' market power, exclusive-dealing arrangements and monopoly positions in the market have enabled them to charge supracompetitive prices, reap monopoly profits, favor suppliers with higher health-care reimbursements, maintain market dominance and deter entry of new competitors. As a consequence of this actual monopolization, BCBS, in concert with all of the defendants, has stifled competition in the market for private health insurance.

186.  The exclusive contracts between Baptist Health and BCBS and HMO Partners for the insurance contracts transfer the monopoly power of the defendants in the insurance market into the hospital market for cardiology services for privately insured patients.

### *Health Insurer Market Concentration*

187.  The American Medical Association tracks market concentrations in health insurance and has published its most recent report entitled, "Competition in health insurance: A comprehensive study of U.S. markets/2007 update." This update is based on HMO and PPO enrollment data as of January 1, 2005, compiled by InterStudy's Managed Market MSA Surveyor and Managed Market State Surveyor. These data are used to compute the Herfindahl-Hirshman Index ("HHI") of competition in a market. The markets are based on metropolitan statistical areas ("MSA"), and the data for the

Little Rock market therefore has a broader geographic footprint than the geographic market at issue here. However, on information and belief, the data for the relevant geographic market mirror the MSA-based data for Little Rock.

188.   The American Medical Association is an authoritative source of market information in the health care industry, and the HHI is the legally authoritative measure of market concentration for purpose of antitrust analysis of proposed mergers or acquisitions.

189.   Under the HHI, a value in excess of 1,800 indicates a highly concentrated market. In the Little Rock MSA, the HHI for the combined PPO and HMO market shares is 6,021, with Blue Cross having 77% market share and United Healthcare having 9%.

190.   The AMA observes that, "While large health insurers have posted very healthy profits since 2000, premiums for consumers have increased without a corresponding increase in benefits. In fact, . . . consumers have faced increased deductibles, co-payments and co-insurance [which] has effectively reduced the scope of their health benefits coverage." Page 2. The report concludes that physicians lack bargaining power to negotiate contracting terms and reimbursement rates with dominant health insurers, which are those with at least 30% market share. *Id.*

191.   The AMA also identifies barriers to entry in the health insurance field, such as "state regulatory requirements, the cost of developing a provider network, and the development of sufficient business to permit the spreading of risk. If entry into health insurance markets were easy, one would expect to see significant entry in response to the significant profits many health insurers have posted in the past five years. However, the opposite has occurred." *Id.*

192.    As a direct result of this combination and conspiracy, interstate commerce has been restrained, competition in the market has been harmed, and plaintiffs have suffered and continue to suffer antitrust injury from being excluded and restrained from competing for cardiology patients. Their damages include lost revenues in the millions of dollars that they would have obtained had there been competition in this market.

193.    One specific consequence of the defendants' restraint of trade and monopolization was a change in the plaintiffs' payor mix to a higher percentage of Medicare and Medicaid patients than would have obtained in a competitive market, which resulted in substantial lost revenues to the plaintiffs.

## COUNT I
### (Section 1 Contract, Combination and Conspiracy in Restraint of Trade)

194.    Plaintiffs incorporate by reference all of the foregoing allegations of paragraphs 1-193 of this complaint, as well as the exhibits to this complaint.

195.    The defendants' conduct specifically alleged in this complaint constitutes an unlawful contract, combination, concerted action or conspiracy to exclude competition and unreasonably restrain interstate commerce in violation of Section 1 of the Sherman Act (15 U.S.C.§ 1). The defendants' conduct is not honestly industrial and is not competition on the merits. To the contrary, the success of defendants' conduct depends on successful restraint of competition.

196.    Through their unlawful contract, combination, concerted actions and conspiracy, the defendants have engaged in the alleged anticompetitive conduct for the purpose of restraining commerce in the market for hospital services for cardiology patients covered by private insurance. The defendants were motivated to erect barriers to entry in order to protect their monopoly positions and market power: the hospital

monopoly required the active support, combination and concerted action of BCBS and HMO Partners, and the private-insurance monopoly required the active support, combination and concerted action of Baptist Health.

197. Through their unlawful contract, combination, concerted action and conspiracy, the defendants have unlawfully injured competition in and adversely affected interstate commerce and business activities in interstate commerce, by, among the other things alleged in this complaint, unreasonably raising prices, restricting patient choice of doctors and hospitals, excluding competition from other hospitals and insurers, raising and maintaining barriers to entry, and harming patient health.

198. Through their unlawful contract, combination, concerted action and conspiracy, the defendants have proximately caused antitrust injury to plaintiffs by excluding and restraining plaintiffs from competing for privately insured cardiology patients, including the loss of referrals for potential patients and the breaking of long-established patient-physician relationships. The interference with plaintiffs' physician-referral network extended beyond the loss of referrals of privately-insured patients and also resulted in the loss of non-insured patient referrals from the formerly referring physicians. As a direct result of defendants' anticompetitive actions, plaintiffs have suffered damages to their property, trade and business in an amount in the millions of dollars, to be established at trial.

199. Plaintiffs are entitled to their actual damages, trebled, plus reasonable attorneys' fees and costs, under Section 4 of the Clayton Act, 15 U.S.C. §15.

## COUNT II
### (Conspiracy to Monopolize – Cardiology Procedures)

200.  Plaintiffs incorporate by reference all of the foregoing allegations of paragraphs 1-199 of this complaint, as well as the exhibits to this complaint.

201.  As specifically alleged in this complaint, defendants have combined and conspired to monopolize the market for hospital services for privately insured cardiology patients in violation of Section 2 of the Sherman Act (15 U.S.C. §2). The defendants' conduct is not honestly industrial and is not competition on the merits. To the contrary, the success of defendants' conduct depends on successful restraint of competition.

202.  Through their unlawful combination and conspiracy to monopolize the market, defendants have engaged in the overt acts, including but not limited to the network exclusions and the Economic Credentialing Policy, alleged above. The defendants were motivated to erect barriers to entry in order to protect their monopoly positions and market power: the hospital monopoly required the active agreement, support, combination and concerted action of BCBS and HMO Partners, and the private-insurance monopoly required the active agreement, support, combination and concerted action of Baptist Health.

203.  Defendants each willfully engaged in the combination, conspiracy and overt acts that violated Section 2 of the Sherman Act (15 U.S.C. §2) and specifically intended to monopolize the market.

204.  Through their unlawful combination and conspiracy, defendants have unlawfully injured competition in and adversely affected interstate commerce and business activities in interstate commerce.

205. Through their unlawful combination and conspiracy, defendants have excluded and restrained competition for hospital services for cardiology patients in the market, jeopardized the health of patients, lowered the quality of care available to cardiology patients in the market, erected and maintained barriers to competition for hospital services and private insurance for cardiology patients in the market, stifled innovation in the market, and increased prices for hospital services and private insurance in the market.

206. Through their unlawful combination and conspiracy, defendants have proximately caused antitrust injury to plaintiffs by excluding and restraining plaintiffs from competing for privately insured cardiology patients, including the loss of referrals for potential patients and the breaking of long-established patient-physician relationships. The interference with plaintiffs' physician-referral network extended beyond the loss of referrals of privately insured patients and also resulted in the loss of non-insured patient referrals from the formerly referring physicians. As a direct result of defendants' anticompetitive actions, plaintiffs have suffered damages to their property, trade and business in an amount in the millions of dollars, to be established at trial.

207. Plaintiffs are entitled to actual damages, trebled, plus reasonable attorneys' fees and costs, under Section 4 of the Clayton Act, 15 U.S.C. §15.

### COUNT III
### (Attempt to Monopolize – Cardiology Procedures)

208. Plaintiffs incorporate by reference all of the foregoing allegations of paragraphs 1-207 of this complaint, as well as the exhibits to this complaint.

209. As specifically alleged in this complaint, defendants have attempted to monopolize the market for hospital services for privately insured cardiology patients in

violation of Section 2 of the Sherman Act (15 U.S.C. §2). The defendants' conduct is not honestly industrial and is not competition on the merits. To the contrary, the success of defendants' conduct depends on successful restraint of competition.

210. In their attempt to monopolize this market, defendants have engaged in the unlawful contract, combination, conspiracy, overt acts and concerted actions specifically alleged in this complaint. The defendants were motivated to erect barriers to entry in order to protect their monopoly positions and market power: the hospital monopoly required the active agreement, support, combination and concerted action of BCBS and HMO Partners, and the private-insurance monopoly required the active agreement, support, combination and concerted action of Baptist Health.

211. Defendants' actions are anticompetitive and were undertaken with the specific intent to exclude and restrain competition, to control prices, and to obtain a monopoly in the market for hospital services for privately insured cardiology patients.

212. There is a dangerous probability that defendants will succeed in their attempt to monopolize the market for hospital services for cardiology patients.

213. Defendants' attempt to monopolize this market has proximately caused antitrust injury to plaintiffs by excluding and restraining plaintiffs from competing for privately insured cardiology patients, including the loss of referrals for potential patients and the breaking of long-established patient-physician relationships. The interference with plaintiffs' physician-referral network extended beyond the loss of referrals of privately insured patients and also resulted in the loss of non-insured patient referrals from the formerly referring physicians. As a direct result of defendants' anticompetitive

actions, plaintiffs have suffered damages to their property, trade and business in an amount in the millions of dollars, to be established at trial.

214. Plaintiffs are entitled to their actual damages, trebled, plus attorneys' fees and costs, under 15 U.S.C. §15.

## COUNT IV
### (Monopolization – Cardiology Procedures)

215. Plaintiffs incorporate by reference all of the foregoing allegations of paragraphs 1-214 of this complaint, as well as the exhibits to this complaint.

216. Baptist Health has and continues to possess monopoly power in the market for hospital services for privately insured cardiology patients.

217. Baptist Health obtained and maintained its monopoly power in this market by willful and unlawful acquisition through, among other anticompetitive conduct, the unlawful contract, combination, concerted action and conspiracy with the defendants specifically alleged in this complaint. The defendants' conduct is not honestly industrial and is not competition on the merits. To the contrary, the success of defendants' conduct depends on successful restraint of competition.

218. Through its unlawful monopoly, Baptist Health has excluded and restrained competition for hospital services for cardiology patients in the market, jeopardized the health of patients, lowered the quality of care available to cardiology patients in the market, erected and maintained barriers to competition for hospital services and private insurance for cardiology patients in the market, stifled innovation in the market, and increased prices for hospital services and private insurance in the market.

219. Through its unlawful monopoly, Baptist Health has proximately caused antitrust injury to plaintiffs by excluding and restraining plaintiffs from competing for privately insured cardiology patients, including the loss of referrals for potential patients and the breaking of long-established patient-physician relationships. The interference with plaintiffs' physician-referral network extended beyond the loss of referrals of privately insured patients and also resulted in the loss of non-insured patient referrals from the formerly referring physicians. As a direct result of Baptist Health's anticompetitive actions, plaintiffs have suffered damages to their property, trade and business in an amount in the millions of dollars, to be established at trial.

220. Plaintiffs are entitled to actual damages, trebled, plus attorneys' fees and costs, under 15 U.S.C. §15.

## COUNT V
### (Conspiracy to Monopolize – Insurance)

221. Plaintiffs incorporate by reference all of the foregoing allegations of paragraphs 1-220 of this complaint, as well as the exhibits to this complaint.

222. As specifically alleged in this complaint, defendants have combined and conspired to monopolize the market for private insurance in violation of Section 2 of the Sherman Act (15 U.S.C. §2). This includes both HMO and PPO insurance. The defendants' conduct is not honestly industrial and is not competition on the merits. To the contrary, the success of defendants' conduct depends on successful restraint of competition.

223. Through their unlawful combination and conspiracy to monopolize the market, defendants have engaged in the overt acts, including but not limited to the network exclusions and the Economic Credentialing Policy, alleged above. The

defendants were motivated to erect barriers to entry in order to protect their monopoly positions and market power: the hospital monopoly required the active agreement, support, combination and concerted action of BCBS and HMO Partners, and the private-insurance monopoly required the active agreement, support, combination and concerted action of Baptist Health.

224.   Defendants each willfully engaged in the combination, conspiracy and overt acts that violated Section 2 of the Sherman Act (15 U.S.C. §2) and specifically intended to monopolize the market.

225.   Through their unlawful combination and conspiracy, defendants have unlawfully injured competition in and adversely affected interstate commerce and business activities in interstate commerce.

226.   Through their unlawful combination and conspiracy, defendants have excluded and restrained competition for private insurance cardiology patients in the market, jeopardized the health of patients, lowered the quality of care available to cardiology patients in the market, erected and maintained barriers to competition for hospital services and private insurance for cardiology patients in the market, stifled innovation in the market, and increased prices for hospital services and private insurance in the market.

227.   Through their unlawful combination and conspiracy, defendants have proximately caused antitrust injury to plaintiffs by excluding and restraining plaintiffs from competing for privately insured cardiology patients, including the loss of referrals for potential patients and the breaking of long-established patient-physician relationships. The interference with plaintiffs' physician-referral network extended beyond the loss of

referrals of privately insured patients and also resulted in the loss of non-insured patient referrals from the formerly referring physicians. As a direct result of defendants' anticompetitive actions, plaintiffs have suffered damages to their property, trade and business in an amount in the millions of dollars, to be established at trial.

228. Plaintiffs are entitled to actual damages, trebled, plus reasonable attorneys' fees and costs, under Section 4 of the Clayton Act, 15 U.S.C. §15.

## COUNT VI
### (Attempt to Monopolize – Insurance)

229. Plaintiffs incorporate by reference all of the foregoing allegations of paragraphs 1-228 of this complaint, as well as the exhibits to this complaint.

230. As specifically alleged in this complaint, defendants have attempted to monopolize the market for private insurance (both HMO and PPO) in violation of Section 2 of the Sherman Act (15 U.S.C. §2). The defendants' conduct is not honestly industrial and is not competition on the merits. To the contrary, the success of defendants' conduct depends on successful restraint of competition.

231. In their attempt to monopolize this market, defendants have engaged in the unlawful contract, combination, conspiracy, overt acts and concerted actions specifically alleged in this complaint. The defendants were motivated to erect barriers to entry in order to protect their monopoly positions and market power: the hospital monopoly required the active agreement, support, combination and concerted action of BCBS and HMO Partners, and the private-insurance monopoly required the active agreement, support, combination and concerted action of Baptist Health.

232. Defendants' actions are anticompetitive and were undertaken with the specific intent to exclude and restrain competition, to control prices, and to obtain a monopoly in the market for private insurance for cardiology patients.

233. There is a dangerous probability that defendants will succeed in their attempt to monopolize the market for private insurance for cardiology patients.

234. Defendants' attempt to monopolize this market has proximately caused antitrust injury to plaintiffs by excluding and restraining plaintiffs from competing for privately insured cardiology patients, including the loss of referrals for potential patients and the breaking of long-established patient-physician relationships. The interference with plaintiffs' physician-referral network extended beyond the loss of referrals of privately insured patients and also resulted in the loss of non-insured patient referrals from the formerly referring physicians. As a direct result of defendants' anticompetitive actions, plaintiffs have suffered damages to their property, trade and business in an amount in the millions of dollars, to be established at trial.

235. Plaintiffs are entitled to their actual damages, trebled, plus attorneys' fees and costs, under 15 U.S.C. §15.

## COUNT VII
### (Monopolization – Insurance)

236. Plaintiffs incorporate by reference all of the foregoing allegations of paragraphs 1-235 of this complaint, as well as the exhibits to this complaint.

237. BCBS, directly and through its subsidiary USAble Corporation, and HMO Partners have and continue to possess monopoly power in the market for private insurance, including both HMO and PPO. These defendants' conduct is not honestly

industrial and is not competition on the merits. To the contrary, the success of these defendants' conduct depends on successful restraint of competition.

238.    These defendants obtained and maintained their monopoly power in this market by willful and unlawful acquisition through, among other anticompetitive conduct, the unlawful contract, combination, concerted action and conspiracy specifically alleged in this complaint.

239.    Through their unlawful monopoly, these defendants have excluded and restrained competition for private insurance for cardiology patients in the market, jeopardized the health of patients, lowered the quality of care available to cardiology patients in the market, erected and maintained barriers to competition for hospital services and private insurance for cardiology patients in the market, stifled innovation in the market, and increased prices for hospital services and private insurance in the market.

240.    Through their unlawful monopoly, these defendants have proximately caused antitrust injury to plaintiffs by excluding and restraining plaintiffs from competing for privately insured cardiology patients, including the loss of referrals for potential patients and the breaking of long-established patient-physician relationships. The interference with plaintiffs' physician-referral network extended beyond the loss of referrals of privately insured patients and also resulted in the loss of non-insured patient referrals from the formerly referring physicians. As a direct result of these defendants' anticompetitive actions, plaintiffs have suffered damages to their property, trade and business in an amount in the millions of dollars, to be established at trial.

241.    Plaintiffs are entitled to actual damages, trebled, plus attorneys' fees and costs, under 15 U.S.C. §15.

## COUNT VIII
### (Injunctive Relief)

242. Plaintiffs incorporate by reference all of the foregoing allegations of paragraphs 1-241 of this complaint, as well as the exhibits to this complaint.

243. Baptist Health, directly and through its subsidiary Baptist Medical System HMO Inc., BCBS, directly and through its subsidiary USAble Corporation, and HMO Partners have violated Section 1 of the Sherman Act through their combination, contract, conspiracy and actions in concert to restrain trade. These defendants have also conspired to monopolize, attempted to monopolize and actually monopolized the market for hospital services for cardiology patients covered by private insurance and the market for private health insurance, in violation of Section 2 of the Sherman Act.

244. Among other unlawful anti-competitive acts, defendants continue to exclude plaintiffs from the markets for privately-insured patients who are covered by employer self-insurance plans of BCBS, USAble and HMO Partners. In addition, BCBS, USAble and HMO Partners unlawfully exclude LRCC's cath lab from reimbursement of facility charges.

245. Plaintiffs have suffered irreparable harm from these unlawful exclusions and will continue to suffer irreparable harm unless and until defendants are enjoined to cease and desist from these unlawful actions.

246. Plaintiffs have no adequate remedy at law to remedy future damages that will flow from defendants' continued unlawful exclusion of the plaintiffs from the self-insured plans of the defendants and from reimbursement for the facility charges of the LRCC cath lab.

247. The Court should enter permanent injunctive relief enjoining and compelling the defendants to admit plaintiffs to their plans for self-insured employers and to reimburse the LRCC cath lab on the same terms as they reimburse hospitals that provide the same services.

## JURY DEMAND

Plaintiffs demand a trial by jury of all issues so triable.

WHEREFORE, plaintiffs demand judgment jointly and severally against the defendants on all Counts, except severally against Baptist Health on the claims in Count IV, for their actual damages proximately caused by the defendants, trebled as required by law, permanent injunctive relief as requested in Count VIII, for their expenses, costs, attorneys' fees and all other just and proper relief.

Respectfully submitted,

WILLIAMS & ANDERSON PLC
111 Center Street, 22nd Floor
Little Rock, Arkansas 72201
Telephone: (501) 372-0800
Facsimile: (501) 372-6453

By: /s/ Janet L. Pulliam
Janet L. Pulliam, AR Bar No. 79233
Benjamin D. Brenner, AR Bar No. 2004172
Jess Askew III, AR Bar No. 86005
Peter G. Kumpe, AR Bar No. 72073
Stephen Hester, AR Bar No. 2002031

John Everett, AR Bar No. 70022
EVERETT LAW FIRM
P.O. Box 8370
Fayetteville, Arkansas 72703
Telephone: (479) 443-0292
Facsimile: (479) 443-0564

*Attorneys for Plaintiffs*

- 76 -

## CERTIFICATE OF SERVICE

  I hereby certify that on March 27, 2008, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to the following:

- **William E. Berlin**
  weberlin@ober.com
- **Robert E. Bloch**
  RBloch@MayerBrown.com
- **Christi J. Braun**
  cjbraun@ober.com
- **Debra K. Brown**
  dbrown@shultslaw.com
- **Judy Simmons Henry**
  jhenry@wlj.com
- **Michelle Marie Kaemmerling**
  mkaemmerling@wlj.com
- **John J. Miles**
  jjmiles@ober.com
- **Troy A. Price**
  tprice@wlj.com
- **Gordon S. Rather, Jr.**
  grather@wlj.com
- **Mitchell D. Raup**
  MRaup@MayerBrown.com
- **Chet A. Roberts**
  cxroberts@arkbluecross.com
- **Steven T. Shults**
  sshults@shultslaw.com
- **Thomas B. Staley**
  tstaley@rsmd.com

                /s/ Janet L. Pulliam